Harold I. Smith, et al.
vs. } P. A. No. 1304.
Leonard E. Smith, et al.

### January 15, 1934.

POULIOT, J. This cause is before the Court on appellees' motion for a new trial after a jury returned a verdict breaking the will of Edward K. Smith.

On April 29, 1930, Edward K. Smith, who was then nearly 60 years of age, executed a will in which, after certain specific provisions, he left a parcel of real estate to his son Leonard, and the rest and residue in trust for the benefit of Leah Godfrey with remainder over to his grandson, the child of Leonard. The will states that he purposely refrained from giving to his two sons, Joseph and Harold, the contestants, any benefit in his estate.

The trial brought out two claims from the contestants; 1st: that the testator lacked testamentary capacity, and, 2nd: that his will was unduly influenced by Leonard E. Smith, and by Leah Godfrey.

The Court has no doubt whatsoever of Edward K. Smith's soundness of mind at the time he executed his will. He was actively engaged in business, handled all of his affairs personally, and, in the opinion of those who saw him frequently, was mentally sound. Even Joseph E. Smith, one of the contestants, testified his father was mentally sound. The contestants seem to base part of their claim on the fact that their father suffered a shock. But that was in May 1930, about a month after the will was executed and, furthermore, Dr. White, who was called in to treat Mr. Smith, continued his treatments during May, June and July, and stated that there was no question of mentality in his mind, that Mr. Smith reacted normally to conversation, that he was a man of decided opinions, set, and not easily influenced. The evidence as to testamentary capacity clearly preponderates in favor of the testator.

The charge of undue influence was directed at Leonard E. Smith and at Leah Godfrey.

There are statements from the contestants and some relatives that the deceased had told them that Leonard had threatened him and had gotten him to make a will and cut off his two stepbrothers. It must be remembered that there was no evidence of such conduct outside of the purported statements of the deceased.

It is interesting to note that Leonard didn't know he had two stepbrothers. More than a quarter of a century before Edward K. Smith executed his will, his wife divorced him and was awarded the custody of their two sons, the contestants. Insofar as any evidence from any other person is concerned, he did not see them again. But the contestants claim they began calling upon him at his shop, Harold about 1927 and Joseph in 1930. In the meantime, Edward K. Smith had married and brought up a son, Leonard E. The father didn't mention this former marriage nor did he allude to his children by his former marriage. Isn't it conceivable that after so many years between the time of his divorce and the time these two boys say they began visiting him at his shop that they were so far in the past that they didn't mean much to him and that his affections had become centered on his son by his second wife?

It does not appear that Leonard was more than normally frequent in his visits to his father. The elder Smith had his own home where he received whom he pleased and was in no way under the domination of his son, Leonard, insofar as any evidence shows.

The charge against Leah Godfrey started out with a dramatic portrayal of a story of a mistress getting property away from her lover. Great stress was laid upon the ownership of a house on Elmwood avenue, which the contestants claimed had been purchased by Edward K. Smith, given over to Leah Godfrey, and maintained by him for her benefit until his death. By documentary evidence of a most satisfactory character, this charge was absolutely disproved.

Certain conduct of Mr. Smith and Miss Godfrey, who testified they were engaged to be married, was characterized to the jury as indecent and as a justification for a claim of undue influence. This referred to their living in the same house at Oakland Beach, but we should not forget that they owned the property there jointly and that this was in the summer of 1931, more than a year after the will was drawn.

Another significant indication is the fact that the testator had possession of the will from April 1930 to the date of his death in December 1931, and on one occasion showed it to an old time friend, with the remark, "They'll not get one cent", referring to these contestants.

The Court feels that the appellees have sustained the burden of proving testamentary capacity; that the appellants have not shown undue influence by any preponderance of the evidence, and, that a new trial should be had.

Appellees' motion for a new trial granted.

For appellants: Emile Ruch.

For appellees: Voigt, Wright & Munroe.